401 A.2d 809

**Sam TANENBAUM and Max Algase, Appellants,**

**v.**

**SEARS, ROEBUCK AND COMPANY and the Cafaro Company, William M. Cafaro and ASC Realty of Pennsylvania, Inc.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1977.

Decided April 12, 1979.

Bruce W. Bernard, Erie, for appellants.

James F. Toohey, Erie, and with him Donald DeSalvo, Youngstown, Ohio, and Howard N. Plate, Erie, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This case is before us following the lower court's dismissal of appellants' complaint in assumpsit and entry of judgment on the pleadings in favor of appellees. For the reasons stated herein, we reverse and remand for further proceedings.

█ A demurrer admits every well pleaded material fact set forth in the pleadings, as well as all inferences, other than conclusions of law, reasonably deducible therefrom. *Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976); *Buchanan v. Brentwood Federal Savings and Loan Association*, 457 Pa. 135, 320 A.2d 117 (1974); *Bordon v. Baldwin*, 444 Pa. 577, 281 A.2d 892 (1971). Viewing the pleadings in this light, the facts pertinent to our decision are as follows. On November 10, 1972, Sam Tanenbaum and Max Algase, appellants, together with Louis J. Porreco, entered into an agreement with ASC Realty of Pennsylvania, Inc. (ASC) and William M. Cafaro (Cafaro) to purchase from ASC and Cafaro a tract of land in Erie, Pennsylvania, identified in the pleadings as the "old Sears property." Pursuant to the agreement, the purchasers established an escrow account consisting of five thousand dollars ($5,000) in cash and a demand note of forty-five thousand dollars ($45,000). ASC and Cafaro were at that time negotiating with Sears, Roebuck and Company (Sears) to acquire title to the property. These negotiations were consummated on March 19, 1973, when Sears agreed to convey the property to Cafaro or a nominee designated by Cafaro. On July 29, 1974, Sears established a closing date for the transaction of September 19, 1974.

In accordance with their option and the November 10th agreement, Cafaro appointed appellants and Porreco as nominees on September 16, 1974. The nomination provided that Sears would transfer the property to the nominees as if they had been the original signatories to the agreement.

This was, however, conditioned on the nominees complying with all the provisions of their November 10th agreement, and performing the obligations of Cafaro under the latter's March 19th agreement with Sears.

On September 23, 1974, Sears notified all parties that because closing had not been effected on September 19, Sears would cease paying its pro-rated share of continuing costs, and closing would be rescheduled to October 7, 1974. Sears further indicated that failure to close on that date would leave them with "no alternative but to look to Cafaro Co. to complete its obligations." Cafaro confirmed this action of Sears in a letter to appellants and Porreco which informed them that they both must assume the now-halted Sears payments, and that they would be considered in default if the closing were not held on the specified date.

In the interim, however, Porreco had refused to supply certain financial data necessary to obtain financing for the purchase, and made certain demands on appellants concerning control over the resale and leasing of the property. As a result of this action, appellants on September 12, 1974, notified Porreco that failure to supply the requisite financial data would result in default and cancellation of his equitable interest. No response was immediately forthcoming from Porreco, but appellants nonetheless secured financing on September 26, 1974. Subsequently, on October 2, 1974, Porreco demanded that appellants pay him one hundred thousand dollars for his interest in the venture. Although appellants refused, Cafaro informed them that Cafaro would not permit the conveyance without the participation of Porreco. The following day, Sears indicated that in the event Cafaro did not approve the transfer, it would convey the property directly to Cafaro.

On October 7, 1974, the agreed upon date for closing, appellants filed an action in equity in Erie County against Porreco and appellees for specific performance and money damages, seeking to cancel any equitable interest of Porreco and to have the property conveyed directly to appellants. Sears remained adamant in refusing to transfer the property

to them alone, but on October 10, 1974, all parties to the action entered into a settlement and the suit was discontinued. The settlement agreement provided in essence that the equity action would be withdrawn, appellants would take title in their name alone, and appellants would indemnify Sears and Cafaro against any loss arising out of the agreement to exclude Porreco. The agreement further contained the following two paragraphs relating to the new time of closing:

"3. The closing of the sale of the property to MAX ALGASE and SAM TANNENBAUM [sic] will take place on or before October 21, 1974, at 1:30 p. m. at the offices of Attorney James Toohey at 1415 Baldwin Building, Erie, Pennsylvania. In the event SAM TANNENBAUM [sic] and MAX ALGASE are unwilling or unable to complete the sale on or before said closing date, they hereby agree to release THE CAFARO COMPANY, WILLIAM M. CAFARO, ASC REALTY OF PENNSYLVANIA, INC., and SEARS, ROEBUCK & CO. from any and all liability under the terms of this Agreement and the above referenced agreements, and they further agree, in such event, that THE CAFARO COMPANY may take title to the subject property directly in its name and any additional expenses, costs, fees or additions to the purchase price that may be required to be paid to SEARS, ROEBUCK & CO. shall be reimbursed to THE CAFARO COMPANY by SAM TANNENBAUM [sic] and MAX ALGASE.

4. SAM TANNENBAUM [sic] and MAX ALGASE further agree that in the event they are unwilling or unable to close the sale as set forth herein, then THE CAFARO COMPANY, WILLIAM M. CAFARO, and ASC REALTY OF PENNSYLVANIA, INC. shall be entitled to all of the proceeds covered under the Escrow Agreement dated November 10, 1972, which agreement is held by The First National Bank of Pennsylvania for the sum of Five Thousand Dollars ($5,000.00) in cash plus interest and a Promissory Note in the face amount of Forty-Five Thousand Dollars ($45,000.00). Said proceeds shall be applied

to the obligations of MAX ALGASE and SAM TAN-NENBAUM [*sic*] set forth in Paragraph 3 above and the proceeds of said Escrow are not to be construed as liquidated damages."

On the morning of October 21, 1974, the date of closing established by the settlement agreement, attorney for appellants requested an extension of closing to October 25, 1974. This request was communicated to the attorney for Sears who, appellants allege, stated to them that if they were not informed to the contrary before the end of the business day, the extension would be acceptable. Appellants also allege that the attorney for Cafaro was immediately informed of this proposition. No refusal was forthcoming that day. Nevertheless, the following day, October 22, 1974, Cafaro dispatched a letter to appellants noting that because closing had not taken place on the preceding day, Cafaro was directing Sears to transfer the property directly to it (Cafaro). On October 25, 1974, Sears complied with this direction.

Appellants then instituted this action in which they allege breach of the agreements and claim damages in excess of one million dollars, including the fifty thousand dollars deposited in escrow pursuant to the November 10, 1972 agreement. Sears and Cafaro filed preliminary objections which included a demurrer to the complaint. The court below sustained the demurrer on the rationale that the language of the October 10, 1974 settlement agreement necessarily made time of the essence. Consequently, because appellants had not tendered the purchase price on October 21st, and because the court below believed that the complaint did not allege facts supporting a conclusion that either Sears or Cafaro had granted an extension of closing, appellants were in default and appellees were entitled to the funds deposited in escrow. With this conclusion we cannot agree.

To sustain preliminary objections in the nature of a demurrer, it must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff. *Gekas v. Shapp, supra; Commonwealth by Creamer v. Mon-*

*umental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974); *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443 (1969). The pivotal issue here is whether the language of the October 10, 1974 agreement actually made time of the essence of the closing.[1] Were time of the essence, it would be necessary to determine whether the extension of closing granted by Sears was effective without a concurrent extension by Cafaro. If time were not of the essence, however, then the consent, or lack thereof, to an extension becomes superfluous. After a close reading of the pertinent clauses, we hold that the language of that agreement is not so unequivocal as to warrant a finding that time was intended to be made of the essence.

 Initially, while we agree with the preliminary statement of the court below that time is not generally of the essence in a contract for the sale of land, we believe that such a conclusion demands amplification. This is an action at law, and it has been generally noted that at law, time is of the essence in a contract for the sale of land even though there is no particular provision in the contract explicitly stating this, and though it does not appear to be the intent of either party. *See Secombe v. Steele*, 61 U.S. (20 How.) 94, 15 L.Ed. 833 (1858); *Bank of Columbia v. Hagner*, 26 U.S. (1 Pet.) 455, 7 L.Ed. 219 (1828); *Stamato v. Agamie*, 24 N.J. 309, 131 A.2d 745 (1957); 77 Am.Jur.2d Vendor and Purchaser § 71 (1975); 3A Corbin, Contracts § 713 (1960); 6 Williston, Contracts § 847 (3d ed. 1962). *See also Withers v. Baird*, 7 Watts 227 (1838). In *Bank of Columbia*, an action at law, a vendor attempted to recover the contract price of

---

1. Although appellants argue otherwise, we concur with the court below in its finding that the October 10th agreement superseded, by its own language, the prior agreements of the parties. Specifically, that agreement stated:

 "SAM TANNENBAUM [*sic*] and MAX ALGASE hereby agree to release SEARS, ROEBUCK & CO., THE CAFARO COMPANY, WILLIAM M. CAFARO, and ASC REALTY OF PENNSYLVANIA, INC. from the provisions of the agreements hereinabove referred to . . . ."

 The last mentioned agreements are presumably those of September 16, 1974, and November 10.

two parcels of land allegedly purchased by the defendant. In addressing the question whether the deeds had been tendered in a timely fashion, the Supreme Court noted:

"The time fixed for performance, is, at law, deemed of the essence of the contract . . . . In Sudgen's Law of Vendors, 275, it is said: 'The general opinion has always been that the day fixed was imperative on the parties at law. This was so laid down by Lord Kenyon, and has never been doubted in practice. The contrary rule would lead to endless difficulties, if in every case it must be referred to a jury to consider whether the act was done within a reasonable time; and the precise contract of the parties would be avoided in order to introduce an uncertain rule, which would lead to endless litigation . . .' "

*Bank of Columbia v. Hagner, supra,* 26 U.S. at 465. In courts of equity, however, this harsh standard has been universally relaxed so that time is not ordinarily regarded as of the essence unless it is so stated in the contract or necessarily implied therefrom. *Bank of Columbia v. Hagner, supra; Tolan v. O'Malley,* 450 Pa. 214, 299 A.2d 229 (1973); *Carsek Corp. v. Stephen Schifter, Inc.,* 431 Pa. 550, 246 A.2d 365 (1968); *Knable v. Bradley,* 430 Pa. 153, 242 A.2d 224 (1968); *Bogojavlensky v. Logan,* 181 Pa.Super. 312, 124 A.2d 412 (1956). Rather, equity will regard it as sufficient if the contract is performed within a reasonable time after the agreed upon date of closing, and in substantial accordance with the contractual terms; consideration being given to all other circumstances. Thus, the mere failure to perform on the specified date is not *per se* a breach which wholly destroys the contract. *Bogojavlensky v. Logan, supra,* 181 Pa.Super. at 319, 124 A.2d at 416. The justification for this rule has been succinctly stated by Professor Corbin:

"The reason that payment or conveyance at the exact time is not 'of the essence,' even though delay will be a breach of contract and a cause of action, is that the injury caused by delay is little or nothing. Delays are frequent in these transactions; and it is the custom of men to overlook them, even though they may have stated in

advance that they would not. The reason can also be stated in this form: performance at a time later than that specified in the contract is 'substantial performance.'" 3A Corbin, Contracts § 716 at 367 (1960) (footnote omitted).

The analysis is valid, and it is difficult to understand the arbitrary distinction drawn by certain courts between the use of this rule in equity and its non-application in law. Indeed, Professor Corbin has noted that common law judges were hardly unaware of the time element in contracts and its relative position vis-a-vis surrounding factors. Contrary to the notion perpetuated by later courts, the law was never so inflexible as to constrain itself to a single, dogmatic, and immutable stance that considered "time" as a "master word in the contract jungle, absolute and uncompromising in its significance and power." 3A Corbin, Contracts § 713 at 353 (1960). At a point when the two systems—law and equity— have been all but amalgamated, it appears nonsensical to both Professor Corbin and this court to consider time of the essence in a contract at law absent some further manifestation of the parties that such is their intent.[2]

■ The above discussion was necessitated by the murky state of Pennsylvania case law on this point. The court below supported its general assertion by citation to *Tolan v. O'Malley, supra. Tolan*, however, was a case in equity involving specific performance, not one at law. More appropriately, in *Shumaker v. Lear*, 235 Pa.Super. 509, 345 A.2d 249 (1975), this court was confronted with an action in law (assumpsit) brought by a real estate broker against a vendor to recover a sales commission. We stated in *Shumaker* that "[o]rdinarily, time is not regarded as of the essence of

2. The abrogation of the distinction between law and equity on this point has long been the subject of examination and approval in other jurisdictions. *E. g., Loyd v. Southwest Underwriters*, 50 N.M. 66, 169 P.2d 238 (1946). *See also* 17 Am.Jur.2d Contracts § 332 (1964) ("the tendency of modern authority at law as well as in equity is to regard the question as one of construction to be determined by the intent of the parties . . . ."); 6 Williston, Contracts § 847 (3d ed. 1962) ("the absorption of equitable principles by the law has modified the severity of this rule. . . .").

contracts for the sale of real property." *Id.*, 235 Pa.Super. at 515, 345 A.2d at 252. Again, however, we cited a case in equity, *Knable v. Bradley, supra,* as support for the proposition without noting any distinction between the two actions. This confusion serves no purpose. It should be made explicit that in law and equity, in contracts for the sale of real property, time is not of the essence unless it is expressly stipulated, or necessarily implied from the language of the contract or clear action of the parties.

 Applying these principles to the instant facts, the pertinent language involving time appears in paragraph three of the October 10th settlement agreement reproduced *supra.* We do not believe that the clause providing for release of the vendors in the event appellants do not close on the prescribed date necessarily implies that time must be considered of the essence. Because time is not usually of the essence in these contracts, if one party wishes to so condition the agreement, it is incumbent on that party to give clear and unequivocal notice to the other party so that the latter may chart his actions accordingly. A vendor must not be allowed to lurk behind contrived ambiguities while preparing to pounce on an unwary purchaser who has not performed on the exact date and minute prescribed in the contract. We agree with the observation of our supreme court that: "When it is so easy to insert the commonly-used phrase 'time to be of the essence' when that is the desired result, we are loath to ascribe that result to any other language." *Carsek Corp. v. Stephen Schifter, Inc., supra,* 431 Pa. at 555, 246 A.2d at 368.[3]

 This is not to intimate that insertion of that exact phrase is absolutely necessary to make time of the essence. It is not a mystic intonation that demands slavish adherence

---

**3.** The contract language in *Carsek Corp.* was more general than that employed here: " 'Settlement to take place within thirty days . . *but in no case shall the time for settlement be longer than seven months from the date of approval of this Agreement of Sale . . .'* " *Carsek Corp. v. Stephen Schifter, Inc., supra,* 431 Pa. at 555, 246 A.2d at 368 (emphasis in original).

to its precise wording.[4] Neither, however, is it a vestigal shibboleth to be inserted at leisure. Rather, it is a conspicuous and universally recognized warning that delayed performance will expose the dilatory party to a default of his interest. Absent such a "red flag", the contractual language must be painstakingly exact to make time of the essence.

Examining the instant contract, it is true that other jurisdictions have occasionally held that language releasing the vendor from all obligations to convey, coupled with a forfeiture clause, makes time of the essence, e. g., *First National Bank v. Glens Falls Ins. Co.*, 27 F.2d 64 (4th Cir. 1928). We believe, however, that this is not so explicit as to bind the purchaser.[5]

Moreover, we do not agree with appellees that the surrounding circumstances indicate that appellants were placed on notice that time was meant to be of the essence. Several closing dates had been ignored without forfeiture actions being instituted, and the time between the October 10th agreement and the established closing date was a mere six business days from the signing of the former.[6] We believe that these circumstances would lead a reasonable man to conclude that, in accordance with general practice absent other language, time was not of the essence.

**4.** In this context, it is of interest to note that Section 2–302(c) of the Uniform Land Transactions Act would not give effect to the phrase "time is of the essence" without further language which explicitly states that failure to perform on time discharges the duties of the other party.

**5.** In *Weaver v. Griffith*, 210 Pa. 13, 59 A. 315 (1904), a case in equity, the pertinent language stated that if the purchase price for a piece of property were not tendered on a specified date, " 'this agreement is to be null and void, and all parties are to be released from all liabilities herein and all money previously paid forfeited.' " *Id.*, 210 Pa. at 14, 59 A. at 315. The court decided that this provision did not terminate the contract upon non-payment, although it did decide that the non-breaching party could elect to enforce its right of forfeiture.

**6.** We further believe that appellants' efforts to secure an extension of the closing date do not necessarily indicate that they believed time to be of the essence.

Because of our interpretation of the forfeiture clause, it is obvious that the action of the court below in sustaining the demurrer was precipitous. The remaining facts of the case, however, are complex and not for the court on a summary judgment.

The judgment of the court below is therefore reversed and the case remanded for further proceedings.

SPAETH, J., files a concurring and dissenting opinion.

CERCONE, President Judge, files a dissenting statement.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring and dissenting:

I agree with Judge PRICE that we should not presume that time is of the essence in every contract, whether in an action at law or in equity. Here, however, it is clear that time was of the essence. This conclusion is not based on any presumption but on the specific and unequivocal language of the contract that "[i]n the event [appellants] are unwilling or unable to complete the sale on or before said closing date, they hereby agree to release [appellees] from any and all liability under the terms of this Agreement and˙ . . . they further agree, in such event, that [appellee Cafaro Company] may take title to the subject property directly in its name and any additional expenses, costs, fees or additions to the purchase price that may be required to be paid to [appellee Sears] shall be reimbursed to [appellee Cafaro Company] by [appellants]." R. at 70a. *See Shumaker v. Lear*, 235 Pa.Super. 509, 345 A.2d 249 (1975) (time was of essence where agreement null and void if mortgage commitment not arranged by stated date).

I should nonetheless reverse the order of the lower court. "A demurrer admits every well-pleaded material fact . . as well as all inferences reasonably deducible therefrom . . . . [citations omitted]." *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691, 693 (1976). Here, appellants pleaded facts

from which a trier could infer that Cafaro and Sears waived the requirement that the sale be completed on or before the closing date. R. 9a–10a.

I therefore believe that the judgment of the lower court should be reversed and the case remanded for further proceedings.

CERCONE, President Judge, dissenting:

I dissent. The present state of the law holds that time is of the essence in an action at law on a contract for the sale of land. I would retain that standard unless the intent of the parties is clearly to the contrary. In this case, I would hold that the language of the October 10, 1974 agreement made time of the essence. This was corroborated by the fact that the parties had failed to meet two prior closing dates and had put appellants on notice that forfeiture was inevitable if the third closing date was not met. Based on these circumstances, I would affirm the lower court's entry of judgment on the pleadings in favor of appellees.