In re Dewey A. WAGNER, Debtor.

PENNWEST FARM CREDIT, ACA, Movant,

v.

Dewey A. WAGNER; Gary J. Gaertner, Trustee; and James L. Witherup and Karen L. Weaver, Respondents.

Dewey A. WAGNER, Movant,

v.

PENNWEST FARM CREDIT, ACA, Respondent.

Dewey A. WAGNER, Plaintiff,

v.

PENNWEST FARM CREDIT, ACA, Defendant.

Bankruptcy No. 94–10479.
Adv. No. 94–1147.
Motion Nos. LJS–1, SHH–4.

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 23, 1994.

Stephen H. Hutzelman, Erie, PA, for debtor.

Louis J. Stack, Meadville, PA, for Pennwest Farm Credit, ACA.

Gary J. Gaertner, Chapter 12 Trustee, Pittsburgh, PA.

## OPINION [1]

WARREN W. BENTZ, Chief Judge.

### Introduction

Before the Court are three related matters which involve the rights or lack thereof of Dewey A. Wagner ("Debtor") in a certain parcel of real estate which contains approximately 19 acres, located in Cranberry Township, Venango County, Pennsylvania (the "Property"). Pennwest Farm Credit, ACA ("Pennwest") obtained judgment against the Debtor in the Venango County Court of Common Pleas and in November, 1993, held a Sheriff's Sale of the Property. Pennwest was the successful bidder at the sale and obtained a Sheriff's deed to the Property.

The Debtor filed a voluntary Petition under Chapter 12 of the Bankruptcy Code on July 13, 1994 ("Filing Date"). Prior to the Filing Date, Debtor filed, in the Court of Common Pleas of Venango County, a COMPLAINT IN ACTION TO QUIET TITLE ("Quiet Title Action"). The Quiet Title Ac-

---

1. This Opinion constitutes this Court's findings of fact and conclusions of law.

tion has been removed to this Court and is now pending at Adversary No. 94–1147. The Debtor has also filed a MOTION FOR DETERMINATION OF PROPERTY RIGHTS which makes the same allegations and seeks the same relief as the Quiet Title Action. The Debtor alleges that Pennwest has failed to comply with the requirements of § 2219a of the Agricultural Credit Act of 1987 ("Act"), 12 U.S.C. § 2219a, and seeks a determination that the Debtor continues to have rights in the Property.

Also before the Court is Pennwest's EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY IN RE: DEBTOR'S FORMER REAL ESTATE. Pennwest asserts that it has complied with all of the provisions of the Act; that Debtor's rights of first refusal have expired; that the Debtor has no interest in the Property; that the Debtor is not eligible to be a debtor under Chapter 12; that there is no equity in the Property and the Property is not necessary for an effective reorganization; and that the Debtor's bankruptcy filing was in bad faith, filed for the purpose of frustrating Pennwest's disposal of the Property. Pennwest seeks relief from the automatic stay to permit it to sell the Property and also seeks dismissal of the Quiet Title Action and the Debtor's Motion for Determination of Property Rights. The Chapter 12 Trustee consents to Pennwest's Motion. We conducted an evidentiary hearing on September 14, 1994 and the parties have filed post-trial briefs. The matter is now ripe for decision.

### Facts

This is not the Debtor's first encounter with bankruptcy proceedings. The Debtor filed a Chapter 12 Petition at No. 91–00829 on October 17, 1991 which was voluntarily dismissed by the Debtor on May 12, 1992 after the conclusion of the first meeting of creditors whereby it became apparent that the Debtor had no means of instituting a farm operation, could not file a Chapter 12 Plan and was not eligible for relief under Chapter 12.

Following the dismissal of Case No. 91–00829, Pennwest obtained a writ of execution on a default judgment and mortgage fore-closure in the Court of Common Pleas of Venango County and scheduled the Property for Sheriff's Sale on November 23, 1992.

On November 23, 1992, the Debtor filed his second Chapter 12 Petition at No. 92–10939, which was converted to a case under Chapter 7 on March 12, 1993, the date fixed for the first meeting of creditors. On April 2, 1993, Pennwest filed a Motion for Relief from the Automatic Stay and a default order was entered at Case No. 92–10939, Motion No. LJS–1 on May 14, 1993.

Case No. 92–10939 was dismissed on July 28, 1993 upon the Motion of the Trustee, Richard W. Roeder, Esq.

Pennwest held a mortgage foreclosure sale on the Property in November, 1993. Pennwest was the successful bidder at the sale and obtained a Sheriff's deed which was recorded on December 27, 1993. At the time of Sheriff's sale, Pennwest was owed $158,-575.50 plus interest from May 8, 1992. Other subordinate judgment liens against the Property totaled $86,024.64.

After it acquired the Property at Sheriff's Sale, Pennwest obtained an in-house appraisal which valued the Property at $65,000. By letter to the Debtor dated November 16, 1993, Pennwest advised the Debtor that it had elected to sell the Property and that Debtor could purchase the Property at the appraised value of $65,000. The November 16th letter set forth the Debtor's rights as follows:

Your rights to purchase the property are as follows:

*Mandatory Sale:*

1. You have the absolute right to purchase the property for the above stated amount.

2. If you wish to purchase it at this price, you must make an offer to purchase within THIRTY 30 days after you receive this letter. If you make an offer, we recommend either delivering it personally to our office with receipt requested or mailing by certified mail to the above address. Under the Act, it is important that you establish delivery or mailing within THIRTY 30 days of receiving our certified letter.

3. If you offer to buy at the above price, the Act says we must accept your offer and do so by accepting and selling within FIFTEEN 15 days of receiving your offer.

4. If you wish to purchase the property, the terms are "cash" and the sale must be closed within FIFTEEN 15 days of the day we receive your offer. In other words, you must have your financing arranged with another lender and have the full payment price set out above in the form of a cashier's or certified check at the closing, which will take place no later than FIFTEEN 15 days after we receive your offer.

*Permissive Sale:*

If you do not wish to purchase the property at the above appraised value, you may offer to purchase the property at a price less than that amount.

Your offer to purchase at less than the above appraised value must be submitted within THIRTY 30 days after you receive this letter.

If your offer is less than the above appraised value, the Act says we may either accept or reject your offer.

a) If we accept, we will close at a reasonable mutually agreeable time.

b) If we reject your offer, we will notify you within FIFTEEN 15 days of receiving your offer.

i. If your offer is rejected, we will "hold it" pending receipt of other offers.

ii. If another offer is received that is higher than yours, the property will be sold to that person without further notice to you.

iii. If we accept an offer from another person at a price equal to or less than your offer, we will come back to you again with another opportunity to purchase the property. The terms and conditions to you will be the same as offered to the other person. Financing is not a "term or condition" under the Act, and we may offer financing to other parties without offering it to you. This opportunity to purchase works as follows:

aa) You may resubmit an offer at the same price and same terms and conditions as offered to the third party. (Again, fi-nancing is not a "term or condition" that has to be the same for you and the other person. We can finance the third party but refuse to finance you.)

bb) If you do submit such an offer, we must accept it. If we accept it, we are not obligated to offer you financing and may insist on cash at the closing.

*Failure to Respond:*

If we do not receive an offer IN WRITING from you (either at appraised value or less) within THIRTY *30 days* from the day you receive this letter, you lose your right of first refusal and we may sell the property to any person at any time without further notice given to you under the Act.

This is an important right and we encourage you to consult with an attorney if you wish to exercise it before the 30 days expire.

Debtor accepted the terms and conditions of the offer, agreed to purchase the Property for $65,000 and paid a $1,000 downpayment. A closing date was fixed and Pennwest granted the Debtor an extension of the closing date to January 28, 1994. When Debtor failed to close as scheduled, counsel for Pennwest notified counsel for the Debtor that Pennwest would continue to market the Property in accordance with the Act.

Pennwest then offered the Property for bid by advertising the Property in various newspapers of general circulation. The advertisements read:

PENNWEST Farm Credit, ACA is offering for bid an 18 acre country retreat. Cranberry Twp., Venango Co., PA. Call (814)336-3149 for more details.

Pennwest received approximately 50 inquiries in response to its advertisements. Each person who made inquiry was sent an information packet consisting of a bid form which indicated the terms of sale.

The minimum bid price was $65,000, and a bid deadline was fixed. The packet also included a legal description of the Property, photographs and a map. Debtor did not receive the information packet. Pennwest received no bids at the minimum price of $65,000.

Pennwest then elected to eliminate the minimum bid requirement and contacted each of the 50 persons who made inquiry to inform them that the minimum bid requirement had been eliminated. Pennwest then received three bids on the Property, and after negotiations with the bidders, received a high bid of $44,000 from James L. Witherup and Kathy L. Weaver ("Buyers") which it determined to accept.

The terms of sale to the Buyers were stated in the TERMS OF SALE AND BID FORM as follows:

> All real estate taxes shall be pro-rated on a calendar year basis as of the closing date. Transfer taxes shall be paid 1% by PWFC, ACA and 1% by successful bidder.
>
> Time is of the essence.
>
> $1,000.00 shall be paid in cash to PWFC,ACA prior to or at the time of their bid. The $1,000.00 to be returned to bidder upon request as long as bidder is not the high bidder at the time. Upon acceptance of a bid by PWFC,ACA, successful bidder must pay to PWFC,ACA ten (10%) percent of the bid · price (minus the $1,000.00 already paid) within one business day from the date and time of notice of the acceptance of the bid. If the ten (10%) percent down payment is not paid when due, PennWest shall have the option to declare the $1,000 forfeited and at that point the bid shall be null and void and PWFC,ACA shall be free to continue to sell the property to other bidders. PWFC,ACA shall notify the terminated bidder in writing of the forfeiture.
>
> Upon the payment of the ten (10%) percent, then closing shall be scheduled for the first business day thirty days from the date of the acceptance of the ten percent down payment at which time the closing shall be held and the balance shall be paid in cash. The closing to be at 10:00 a.m. at the office of PWFC,ACA listed above or their attorney's office in Crawford County, PA. At any time the PWFC,ACA shall have the right to accept as final any bid. PWFC,ACA shall have no duty to warn any bidder that their bid or any other bid may become final.

Federal Law provides a 30 day right of first refusal and a right to basically match any bid to certain prior owners of the farm. PWFC,ACA will provide owners with a 30 day right of first refusal after acceptance of a bid.

The Buyers tendered their downpayment. Debtor was not provided a copy of the Buyer's offer; however, on May 9, 1994, Pennwest prepared a letter which advised Debtor of his further right of first refusal.

As evidenced by receipts for certified mail and certificates of mailing, the May 9, 1994 letter was mailed by both certified mail and first class mail to Debtor at three different addresses in Pennwest's records and to two attorneys of record for the Debtor.

The Debtor admits receipt of the May 9, 1994 letter. The May 9th letter provides:

> Pennwest Farm Credit, ACA has elected to sell property which you previously owned. Under the Agricultural Credit Act of 1987 (the "Act"), you are given a right of first refusal to repurchase this property. (See attached Exhibit A for Legal Description)
>
> We have accepted a bid from another person. You have the opportunity to purchase the property at the same terms and conditions as offered to the other person. You may purchase the property for $44,-000.00 under the following terms and conditions.
>
> 1. If you wish to purchase it at this price, you must make an offer to purchase within THIRTY 30 days after you receive this letter. If you make an offer, we recommend either delivering it personally to our office with receipt requested or mailing it certified mail to the above address. Under the Act, it is important that you establish delivery or mailing within THIRTY 30 days of receiving our certified letter.
>
> 2. If you offer to buy at the above price, the Act says we must accept your offer and do so by accepting and selling within FIFTEEN 15 days of receiving your offer.
>
> 3. If you wish to purchase the property, the terms are "cash" and the sale must be closed within FIFTEEN 15 days of the day we receive your offer. In other words,

you must have your financing arranged with another lender and have the full payment price set out above in the form of a cashier's or certified check at the closing, which will take place no later than FIFTEEN 15 days after we receive your offer.

*Failure to Respond:*

If we do not receive an offer IN WRITING from you within THIRTY *30 days* from the day you receive this letter, you lose your right of first refusal and we may sell the property to any person at any time without further notice given to you under the Act.

This is an important right and we encourage you to consult with an attorney if you wish to exercise it before the 30 days expire.

By letter dated June 10, 1994, Debtor elected to exercise his right of first refusal. The Debtor's letter provides, in relevant part:

In accordance with the terms of the right to repurchase the property ... please accept this, my letter, as my notice of intent to exercise the said right and offer to purchase the property for $44,000.00 upon the terms set forth in your letter of May 9, 1994.

I briefly discussed with Mr. Stack the availability of funds for the repurchase, and we discussed the prospect of settling by the end of next week at a mutually-agreeable time with you as well.

I shall call you next week to discuss further details and a time for settlement.

Pennwest received Debtor's letter on June 14, 1994, accepted it as timely, and proceeded to fix a closing date of June 29, 1994 for the transaction. Pennwest next received a letter by facsimile transmission dated June 21, 1994 from Jeffrey L. Totten on behalf of Diversified Financial ("Diversified"). Totten's letter indicated that Diversified was prepared to provide Pennwest a certified check or cashier's check on behalf of Debtor in the amount of $44,000 and to close the transaction during the 15–day period allowed by Pennwest.

On June 29, 1994, Debtor did not appear at the closing. Pennwest contacted Debtor's counsel and learned that no closing had taken place. Pennwest received further correspondence from Diversified indicating that Debtor had called Diversified on June 28, 1994 and informed Diversified that he had found alternative financing and did not need the financing arranged through Diversified to exercise his right of refusal.

On the same day as the closing was scheduled, Debtor filed the Quiet Title Action which prevented Pennwest from going forward with its sale to the Buyers.

The Property has two buildings on it -- a house under construction and a second older vacant house. The vacant house is unlivable. The house under construction has boarded windows and a leaking roof which is causing the plaster to sag.

### Issues

The issues before the Court are:

1) Whether Pennwest has complied with the mandates of the Act, in particular § 2219a; whether the Debtor was properly afforded his right of first refusal; and whether Debtor's right of first refusal expired prior to the Filing Date such that Debtor's legal and equitable interests in the Property were extinguished.

2) Whether the Debtor is eligible for relief under Chapter 12 of the Bankruptcy Code.

3) Whether the Property is necessary for an effective reorganization.

4) Whether the Debtor's bankruptcy filing was in bad faith.

Because we find that Pennwest properly complied with the Act and that Debtor's rights in the Property were extinguished prior to the Filing Date, we do not address the remaining issues.

### Discussion

If a borrower loses his agricultural real estate as a result of foreclosure by an institution of the Farm Credit System, the borrower has certain rights with respect to the property. Among those rights is the right of first refusal if the Property is sold at a private sale, a public offering, or if it is

leased. 12 U.S.C. § 2219a; *In re Solberg,* 125 B.R. 1010 (Bankr.D.Minn.1991).

12 U.S.C. § 2219a provides:

§ 2219a. *Right of first refusal*

*(a) General rule*

Agricultural real estate that is acquired by an institution of the System as a result of a loan foreclosure or a voluntary conveyance by a borrower (hereinafter in this section referred to as the "previous owner") who, as determined by the institution, does not have the financial resources to avoid foreclosure (hereinafter in this section referred to as "acquired real estate") shall be subject to the right of first refusal of the previous owner to repurchase or lease the property, as provided in this section.

*(b) Application of right of first refusal to sale of property*

*(1) Election to sell and notification*

Within 15 days after an institution of the System first elects to sell acquired real estate, or any portion of such real estate, the institution shall notify the previous owner by certified mail of the owner's right—

(A) to purchase the property at the appraised fair market value of the property, as established by an accredited appraiser; or

(B) to offer to purchase the property at a price less than the appraised value.

*(2) Eligibility to purchase*

To be eligible to purchase the property under paragraph (1), the previous owner must, within 30 days after receiving the notice required by such paragraph, submit an offer to purchase the property.

*(3) Mandatory sale*

An institution of the System receiving an offer from the previous owner to purchase the property at the appraised value shall, within 15 days after the receipt of such offer, accept such offer and sell the property to the previous owner.

*(4) Permissive sale*

An institution of the System receiving an offer from the previous owner to purchase the property at a price less than the appraised value may accept such offer and sell the property to the previous owner. Notice shall be provided to the previous owner of the acceptance or rejection of such offer within 15 days after the receipt of such offer.

*(5) Rejection of offer of previous owner*

*(A) Duties of Institution*

An institution of the System that rejects an offer from the previous owner to purchase the property at a price less than the appraised value may not sell the property to any other person—

(i) at a price equal to, or less than, that offered by the previous owner; or

(ii) on different terms and conditions than those that were extended to the previous owner,

without first affording the previous owner an opportunity to purchase the property at such price or under such terms and conditions.

*(B) Notice*

Notice of the opportunity in subparagraph (A) shall be provided to the previous owner by certified mail, and the previous owner shall have 15 days in which to submit an offer to purchase the property at such price or under such terms and conditions.

.     .     .     .     .

*(d) Public offerings*

*(1) Notification of previous owner*

If an institution of the System elects to sell or lease acquired property or a portion thereof through a public auction, competitive bidding process, or other similar public offering, the institution shall notify the previous owner, by certified mail, of the availability of the property. Such notice shall contain the minimum amount, if any, required to qualify a bid as acceptable to the institution and any terms and conditions to which such sale or lease will be subject.

.     .     .     .     .

*(e) Term or condition*

For the purposes of this section, financing by a System institution shall not be considered to be a term or condition of a sale of acquired real estate.

*(f) Financing*

Notwithstanding any other provision of this section, a System institution shall not be required to provide financing to the previous owner in connection with the sale of acquired real estate.

*(g) Mailing of notice*

Notwithstanding any other provision of this section, each certified mail notice requirement in this section shall be fully satisfied by mailing one certified mail notice to the last known address of the previous owner.

*(h) State laws*

The rights provided in this section shall not diminish any such right of first refusal under the law of the State in which the property is located.

. . . . . .

12 U.S.C. § 2219a.

The Debtor's Quiet Title Action and Motion for Determination of Property Rights are based on its allegations that Pennwest has violated § 2219a.

The parties agree that the Property is subject to the right of first refusal.

█ The Debtor's first challenge·is under § 2219a(b)(1)(A). Debtor asserts that Pennwest violated the Act by relying on the $65,000 appraisal of a Pennwest employee-appraiser rather than obtaining an appraisal by an "accredited appraiser." § 2219a(b)(1)(A) does not require an independent appraisal. *K Lazy K Ranch Inc. v. Farm Credit Bank of Omaha,* 127 B.R. 1014, 1021 (D.S.D.1991).

The appraisal does not dictate the final selling price. It is only the benchmark amount at which a property is initially offered to a debtor. A debtor is free to either accept the property at the appraised price or offer a lower amount. If a lower amount is offered, the farm credit institution may market the property to seek a different bid. No matter what bid the farm credit institution decides to accept, the debtor is offered the opportunity to match that bid. Thus, any appraisal has the built-in safeguard of the market itself. *See In re Solberg,* 125 B.R. 1010 (Bankr.D.Minn.1991). Accordingly, Pennwest properly relied on its in-house appraisal.

After obtaining its in-house appraisal, in accordance with § 2219a(b)(1), Pennwest notified the Debtor of his right to purchase the Property for $65,000. As required by § 2219a(b)(2), Debtor submitted an offer to purchase. As required by § 2219a(b)(3), Pennwest accepted Debtor's offer. Pennwest fixed a closing date and at Debtor's request, subsequently extended the closing date. Despite the extension, Debtor failed to close the transaction.

█ After Debtor's failure to exercise his right of first refusal to purchase the property at the appraised price of $65,000, Pennwest elected to make a public offering of the Property in accordance with 12 U.S.C. § 2219a(d). Pennwest advertised the Property and solicited bids. The Debtor asserts that Pennwest failed to notify Debtor of the availability of the Property. It was not necessary for Pennwest to send the bid package to the Debtor or notify the Debtor of the bid process until it was completed, by reason that Debtor had the right to match any bid for less than $65,000 on the same terms and conditions as the bid Pennwest might choose to accept.

Pennwest eventually determined to accept the Buyer's bid of $44,000. Pennwest made an extra effort to notify Debtor of the availability of the Property at the price of $44,000. It mailed both certified letters and first class letters to *all* known addresses of the Debtor and to Debtor's counsel of record, clearly meeting the requirements of § 2219a(g). The Debtor questions the date of receipt of the notice, but that issue is irrelevant as Pennwest treated Debtor's offer to purchase for $44,000 as timely received.

Pennwest is required to offer the Property to the Debtor on terms no less favorable than those offered to the Buyers. The Buyers were required to pay a 10% downpayment and to close the transaction one day after the period for Debtor to exercise his right of first refusal expired. Pennwest required no downpayment from the Debtor and granted Debtor 15 days to close from the date it received Debtor's offer.

■ It is the Debtor's position that the requirement that the closing take place within 15 days misstated the law and thus was not effective to commence the running of the right of first refusal. The Debtor asserts that the law provides a reasonable time to close the transaction and that "[t]o impose the narrow fifteen day limitation on closing is to frustrate the basic purpose of the [Act]."

The agreement between Pennwest and the Buyers ("Agreement") stated that "time is of the essence." The Debtor did not receive a copy of the Agreement. The notice to Debtor of his right to purchase the Property at the same terms and conditions as offered to the Buyers fixed a specific period of 15 days for closing after Pennwest received the Debtor's offer, but did not use the words "time is of the essence."

■ If time is of the essence, it is necessary that there be clear and unequivocal notice. *Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507 (Pa.1986); *Tanenbaum v. Sears, Roebuck and Co.,* 265 Pa.Super. 78, 401 A.2d 809 (Pa.Super.1979). The use of the exact phrase, "time is of the essence," is not absolutely required, as long as the language provides a "red flag" which puts parties to the contract on notice that time is of the essence. *Tanenbaum,* 265 Pa.Super. at 89, 401 A.2d at 814.

The language of Pennwest's May 9, 1994 offer to the Debtor provided a specific period of time for the Debtor to close the transaction.

In accepting the offer, Debtor agreed to the terms of the offer and recognized the necessity to close within the 15 day period. In the Debtor's June 10 letter, Debtor indicated a willingness to close by the end of the following week. As evidenced by the letters of Diversified, Debtor made the necessary financial arrangements to close by the required date. Finally, the Debtor recognized that his failure to close would result in the forfeiture of his rights in the Property, as shown by his filing of the Quiet Title Action on the date of the scheduled closing to prevent Pennwest from transferring the Property to the Buyers.

This is not a situation where there were ambiguities. The seller was not preparing to "pounce on an unwary purchaser." It is not reasonable to conclude that the Debtor did not know that time was of the essence.

■ "[E]ven where time is not of the essence, the time for completion is not unlimited and must be reasonable under the circumstances." *Davis v. Northridge Development Associates,* 424 Pa.Super. 283, 290, 622 A.2d 381, 385 (Pa.Super.1993) *citing Commonwealth v. Pendleton,* 480 Pa. 107, 113, 389 A.2d 532, 535 (Pa.1978).

Under the circumstances of the case, we find that allowing the Debtor 15 days to close after Pennwest accepted the Debtor's offer was a reasonable amount of time. Debtor has continually frustrated Pennwest's efforts since 1991. The Debtor filed two prior bankruptcy cases to invoke the automatic stay which were both dismissed. Pennwest finally obtained title at Sheriff's Sale and went through all of the required procedures to give Debtor an opportunity to repurchase the Property. The purpose of the Act, to give a borrower every opportunity to repurchase his property, has been met. The Debtor was originally offered the Property at the appraised value. Debtor accepted the offer and a closing date was fixed. Despite being granted an extension of time to proceed with the closing, Debtor failed to close.

Pennwest then proceeded with a public offering of the Property. Again, Debtor was given the opportunity to repurchase. Debtor accepted the offer, agreed to its terms and agreed to close within the time limits clearly set forth by Pennwest. Pennwest received information that the Debtor had financing in place. Still, Debtor failed to appear at the scheduled closing or to request an extension of time. Debtor clearly recognized the urgency of a timely closing and the forfeiture of his right of first refusal by failing to appear at the closing as shown by Debtor's filing of the Quiet Title Action on the same date scheduled for the closing. Debtor has now filed his third bankruptcy case to frustrate Pennwest's efforts to market the Property and in an attempt to regain rights in the Property which, in our view, have already been lost.

Finally, while the Debtor continues to invoke roadblocks to Pennwest's disposal of the Property, the Property continues to deteriorate by reason that it remains unoccupied; it has boarded-up windows, and the roof is leaking.

Pennwest had a right to anticipate that the Debtor would be ready, willing, and able to close. The failure to close was all precipitated by the Debtor. Pennwest was at all times ready to close and to retransfer the Property to the Debtor.

The Debtor asserts that Pennwest failed to notify the Debtor of the efforts to sell to others for a lower price when it advertised the Property and mailed out bidding packages. The Debtor asserts that this was highly prejudicial because it substantially limited the time within which Debtor could seek financing. § 2219a(d)(1) does not require Pennwest to notify the Debtor of the availability of the Property simultaneously with the marketing of the Property. The purpose of the Act is to allow the Debtor to match any offer received. Pennwest, by its letter of May 9, 1994, met this requirement. Further, correspondence received by Pennwest from Diversified shows that the Debtor had financing available and in place to close on June 29, 1994. The Debtor elected not to close. The Debtor suffered no prejudice by learning of the $44,000 offer via Pennwest's May 9 letter.

All of the Debtor's rights of first refusal under the Act expired when the Debtor failed to close on June 29, 1994. The Debtor has no legal or equitable interest in the Property.

We held the evidentiary hearing on September 14, 1994. There was no evidence that Debtor had at any time tendered or offered to tender the $44,000. Nor have we been advised by counsel even as of the date hereof that Debtor desires to tender the $44,000.

## ORDER

This 23 day of November, 1994, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. Pennwest Farm Credit, ACA is granted relief from the automatic stay imposed by 11 U.S.C. § 362.

2. Pennwest Farm Credit, ACA has complied with 12 U.S.C. § 2219a with reference to the Debtor, Dewey A. Wagner's rights of first refusal arising from the James L. Witherup and Kathy L. Weaver bid in the sum of $44,000 for the property, and Pennwest may convey the property to James L. Witherup and Kathy L. Weaver free and clear of any and all rights which the Debtor may have under the Farm Credit Act or the Agricultural Credit Act of 1987.

3. Judgment is hereby entered in favor of Pennwest Farm Credit, ACA and James L. Witherup and Kathy L. Weaver and against Dewey A. Wagner on the Quiet Title Action filed at Case No. Civ. 1051–1994 in the Court of Common Pleas of Venango County, Pennsylvania, which action has been removed to this Court at Adversary Proceeding No. 94–1147.

4. Judgment is entered in favor of Pennwest Farm Credit, ACA and against Dewey A. Wagner on the Motion for Determination of Property Rights filed at Motion No. SHH–4.