## Knable, Appellant, *v.* Bradley.

Argued November 21, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Bernard J. Myers, Jr.,* with him *Zimmerman, Zimmerman, Myers & Gibbel,* for appellants.

*Menno B. Rohrer,* for appellees.

OPINION BY MR. JUSTICE JONES, May 21, 1968:

In June of 1958, Walter S. Bradley and Elsie W. Bradley (Bradleys) and Marlin E. Knable and Shirley Mae Knable (Knables) entered into a written agreement for the sale of a 100 x 200 foot parcel of land located immediately adjacent to the Knables' homestead in Elizabeth Township, Lancaster County. At the request of Bradleys, the agreement had been drafted by a justice of the peace and was signed by the parties at separate times and places. Upon signing the agreement, the Knables entered into possession,

cleared the parcel of brush and bramble growing there and have since kept the field grass and weeds mowed. The Knables' primary purpose in acquiring the parcel was to have permanent access to a well located thereon.

As regards the purchase price, the agreement provided: "In consideration of which the purchaser does hereby promise and agree to purchase said premises, and to pay or cause to be paid unto the owner the sum of Twelve Hundred seventy-five ($1275.00) dollars to be paid as follows: Fifteen ($15.00) dollars on the signing of this agreement, the receipt of which is hereby acknowledged (which deposit shall be forfeited to the owner in case of default by the purchaser in the performance of the terms of this agreement) and the balance of the purchase money as follows: Fifteen ($15.00) dollars per month which shall include interest to be paid hereon with the first payment due May 1st, 1958 and monthly thereafter. All monthly payments shall be forfeited to the owner in case of default by the purchaser in the performance of the terms of this agreement."

Settlement was to be made on or before March 1, 1965, and the Knables were to pay real estate taxes on the parcel for the year 1958 and thereafter. It should be noted that the parties did not include a provision that time was material to this agreement, and in the absence of such a stipulation, equity will not regard the element of time as essential: *Cochrane v. Szpakowski,* 355 Pa. 357, 49 A. 2d 692 (1946).

For a period of two years the Knables faithfully performed their undertaking by making regular monthly payments. In June of 1960, no payment was forthcoming, but on July 29, 1960, the Knables paid $30, for June and July of 1960. Thereafter, payments were made and accepted at irregular intervals of two or

three months. The last payment of $45 was accepted by the Bradleys on August 17, 1962. At this point all payments were current for the first 52 months of the term of the agreement, and including the $15 paid upon execution of the agreement, the Knables had paid $795 of the purchase price. No payments were received thereafter but no complaint was heard from the Bradleys concerning the Knables' failure to live up to the strict terms of the agreement.

About April 1, 1963, Mr. Knable tendered a payment of $30 to Mr. Bradley and was told, for the first time, that "the agreement was off". However, Bradley allowed the Knables to continue paying real estate taxes on the parcel and in no way disturbed their possession. Thereafter, Mr. Knable escrowed the sum of $542.75 with his attorney and, by the filing of the complaint, tendered the balance remaining on the purchase price; $480. Knables alleged their willingness and ability to perform, but Bradleys have refused to execute a deed in their favor.

Knables, seeking specific performance, instituted an equity action against Bradleys in the Court of Common Pleas of Lancaster County. After hearing, the court entered a decree dismissing the complaint. From that decree this appeal was taken.

The court below held that Bradleys were within their rights to declare a forfeiture on April 1, 1963, and that Knables were not entitled to a decree of specific performance.

It is apparent from the record in this case that Bradleys never either complained of the late payments or put Knables on notice that they were demanding future performance at the precise times specified in the agreement. Although Mr. Bradley testified that he spoke to Mr. Knable several times about the late payments, he was unable to relate either what he told

him in this regard nor could he pinpoint the time of these alleged complaints as to year, season or month. From this testimony, it is highly unlikely that the Bradleys put the Knables on notice that strict adherence to the terms of the agreement was required lest a forfeiture occur. By their inaction, Bradleys led the plaintiffs into the belief that strict regularity of payment would *not* be required and, after an eight months period in which no payments were made, upon the tender of $30 by the Knables, Mr. Bradley announced that "the agreement was off".

The basic rule is clearly set forth in *Warren Tank Car Co. v. Dodson,* 330 Pa. 281, 285, 286, 287, 199 A. 139 (1938), wherein Mr. Justice (later Chief Justice) STERN said: ". . . where a contract provides for payments at certain times, and for forfeiture upon default, but the creditor, either by inaction or by an affirmative course of dealing, misleads the debtor into the belief that strict regularity of payments will not be insisted upon, he cannot thereafter declare a forfeiture unless he first gives reasonable notice to the debtor that in the future he will demand performance at the precise times specified in the contract . . . . [This] is a principle, not of law, but of equity. From the strict *legal* standpoint the creditor is entitled to enforce the forfeiture according to the terms of the contract, but *equity,* or a court administering equitable principles under legal forms, will not permit him to do so if by lulling the debtor into a false sense of security he has led him into a default which otherwise the debtor might have avoided . . . . Prior indulgence by the creditor *does not give the debtor an automatic right to an extension, but merely a reasonable opportunity to perform* provided *he can show that additional time would enable him to do so* . . . . A court of equity will relieve the debtor only upon his paying the debt."

Where the parties have clearly made time an essential element to the contract, then notice of an intention to proceed is not necessary: *New Eastwick Corp. v. Phila. Builders Eastwick Corp.*, 430 Pa. 46 (1968); *Shilanski v. Farrell*, 57 Pa. Superior Ct. 137 (1914); but this is an exception to the above quoted rule and such a provision will not be implied from a contract ambiguous as to time.

In the present case, Bradleys declared a forfeiture when Knables, eight months in arrears on the promised payments, tendered payment to cover two or three months of the arrearage. Knables were given no opportunity to make payment in full, nor were they provided with additional time in which to pay the balance, and this took place two years *prior* to the date on which Bradleys had promised to execute a deed for the parcel. At the time of filing the complaint, July 12, 1963—seven and one-half months before the closing—Knable tendered the balance of the purchase price. Since the debtor had shown himself able and willing to pay the debt, it was an abuse of discretion for the chancellor to dismiss the complaint and fail to enter a decree of specific performance, since he found the agreement valid in all other respects.

Bradleys claim that this tender of performance is not good because the Knables did not, on the date of filing the complaint, or at any time theretofore or thereafter, offer to pay interest on the purchase price as allegedly provided in the agreement. This seems to imply that, in addition to the purchase price of $1275, which included interest, there was due an additional amount representing interest. We cannot find where any *additional* interest is owed. The Knables had paid $795 by August 17, 1962, and tendered $480 when they filed the complaint on July 12, 1964, which represented a total sum of $1275. This is *all* that was due at clos-.

ing. Mr. Bradley clearly understood that interest on the purchase price was included in the agreed-upon figure of $1275, as the record shows, where cross-examination of Mr. Bradley, revealed the following: "Q. Now let us get into this interest thing. Do I understand that the fifteen dollars was to include both principal and interest? A. That's right. Q. So that as Mr. Knable made his payments he was paying interest all the time? A. Yes, sir."

The last payment was made on August 17, 1962, and at that time there remained 16 monthly payments of $15 to be made, if we include a payment to be made at closing, March 1, 1965. Simple multiplication shows that the amount would be $480. Since interest payments were included in the $15 monthly payments, no further interest was due at the time the balance was tendered, and by the very terms of the agreement, none could be due.

Decree reversed with direction to reinstate the complaint and enter a decree of specific performance. Each party to bear own costs.

Mr. Chief Justice BELL dissents.