537 A.2d 1355

**Carl CIMINA and Elizabeth Cimina, His Wife, Appellees,**

v.

**Tony BRONICH, Appellant.**

**Tony BRONICH, Appellant,**

v.

**Carl CIMINA and Elizabeth Cimina, His Wife, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 23, 1987.

Decided Feb. 26, 1988.

John M. Silvestri, Pittsburgh, for appellant.

Richard DiSalle, Rose, Schmidt, Chapman, Duff & Hasley, Pittsburgh, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

McDERMOTT, Justice.

Appellant, Tony Bronich, appeals by allowance from an order of the Superior Court [1] denying him specific performance of an option to purchase certain property consisting of 26.25 acres in Perry Township, Fayette County, Pennsylvania. The Superior Court had affirmed in part and reversed in part an order of the Court of Common Pleas of Fayette County which had dismissed appellees' action in ejectment and granted appellant's prayer for specific performance.

The facts relevant to this controversy are as follows. On September 15, 1970, after approximately two years of negotiations appellees/lessors, Carl and Elizabeth Cimina, entered into a lease agreement with appellant/lessee, Tony Bronich, concerning 26.25 acres of real estate in Perry Township, located in Fayette County, Pennsylvania. The lease had an original term of two years with a right of renewal for ten additional one-year terms. The rental amount for this property was $100.00 per month. In addition, the lease afforded appellant an option to purchase the leasehold property for $18,600.00 at any time during the initial term of the lease, or any of the subsequent renewal periods.

This parcel was part of a larger tract owned by the Ciminas. Appellant occupied the adjacent property and desired to expand and utilize the premises as a location for his business of buying and selling used heavy construction equipment and earth-moving vehicles.

As adjoining neighbors the parties enjoyed an amiable relationship over the years. However, in early 1980 this association began to deteriorate when the Ciminas questioned the financial wisdom of their arrangement, particularly the purchase option held by appellant. Consequently, the Ciminas sought to terminate the lease, and this desire precipitated the present lawsuit.

Up until this point it was appellant's custom to hand deliver his payments in return for a signed receipt. How-

1. 349 Pa.Super. 399, 503 A.2d 427 (1985).

ever, in the beginning of 1980 appellees began to resist signing a receipt and eventually the payments altogether were refused. This pattern of behavior continued until appellant, upon consulting with his attorney, established a rent escrow account and continued to make regular payments. It was at this time that appellant, through his attorney, informed appellees of his intention to hold them to their legal obligations and more significantly, to exercise his purchase option on the property prior to the expiration of the final renewal term of the agreement.

Over the course of the next several months the relationship continued to worsen. Finally, on June 18, 1981, appellee sent a letter which read in its entirety: "Request your payment of all money due me through March 14, 1981." Appellant was confounded by this request since he was under the impression that he was current in his payments. The situation finally peaked when appellant received on August 7, 1981, a "Notice to Quit" demanding that he forfeit the lease and vacate the premises within ninety days because of his alleged breach of the agreement. Specifically, appellees asserted that appellant was in breach of the provision regarding the payment of real estate taxes on the leased portion of the property.[2]

It is undisputed that the lease specified that the tenant must pay the real estate taxes on the leasehold premise. The relevant provision of the agreement provided that:

> During the term of this lease, Lessee will pay all real estate taxes levied and assessed against the subject premises, whether statements therefor are sent to Lessors or Lessee. If the real estate taxes on the leased premises

2. In their amended complaint, appellees alleged that in addition to his failure to pay the real estate taxes on the leased property appellant had breached the agreement in the following additional aspects: violation of the local zoning ordinance with respect to the operation of his business; noncompliance with certain water and sewage regulations of the Department of Resources; noncompliance with the rules and regulations of the Commonwealth's Department of Transportation regarding highway access; and failure to maintain the leased premises in good order and repair as required under the lease. The trial court dismissed these allegations as meritless and they are not at issue in this appeal.

are combined with real estate taxes on other property now owned by Lessors, then Lessee will pay only those taxes attributable to the leased premises and any improvements which may hereafter be erected thereon.

However, from the inception of the lease the real estate taxes assessed to appellees' total acreage were paid each year by Elizabeth Cimina. Mrs. Cimina was apparently unaware of appellant's contractual liability, and was neither informed by her husband nor sought from appellant his share of the taxes. Appellant, on the other hand, maintained that at least once every year he asked Mr. Cimina if he owed any taxes and was assured that none were due. Appellant never refused to pay these taxes and always stood ready to perform, but was never informed of his share. The real estate taxes in question amounted to approximately $500.00.

Following receipt of the "Notice to Quit", appellant's attorney on August 24, 1981, notified appellees of his intention to exercise the option to purchase the property. Meanwhile, on October 15, 1981, appellees filed their confession of judgment in ejectment which, in turn, was answered by appellant's petition to open on October 23, 1981. One week later, appellant filed a separate petition seeking specific performance on the purchase option. Both actions were consolidated for purposes of a non-jury trial. Following two days of hearings the trial court ruled in appellant's favor on both petitions, dismissing appellees' action in ejectment and granting appellant's prayer for specific performance.

On appeal the Superior Court affirmed the lower court's refusal to order a forfeiture, and agreed with the Chancellor that appellant's failure to pay the real estate taxes was not a material breach of the lease that would warrant such action. However, while admitting that the breach was not sufficient to mandate a forfeiture, the court held that appellant did in fact breach the agreement, and moreover, failed to demonstrate his clear right to specific performance. Therefore, the court reversed the grant of specific

performance. Appellant petitioned our Court for allowance of appeal, which was granted.

The basic issue in this case is whether the Superior Court properly denied specific performance based on a technical breach where that breach had previously been determined to be immaterial.

■ Specific performance compels the surrender of a thing in itself, because that thing is unique and cannot by its nature be duplicated. *See Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897 (1979). The value of the object sought transcends money because it has no peer of location, antiquity, artistry or skill. Thus, when two persons want only what one can have, only the clearest right can prevail, and it cannot be decided by reasons other than the most careful discrimination of long precedent and careful scrutiny of the equities arising from the facts. A Chancellor must at last be relied upon to perceive them, and if the facts can support his decision, we are bound to follow it. *See Payne v. Clark,* 409 Pa. 557, 187 A.2d 769 (1963).

■ Mindful of this caution, specific performance should only be granted where the facts clearly establish the plaintiff's right thereto, where adequate remedy at law does not exist, and where justice requires it. *Clark v. Pennsylvania State Police,* 496 Pa. 310, 436 A.2d 1383 (1981); *Roth v. Hartl,* 365 Pa. 428, 75 A.2d 583 (1950).

This Court has previously held that a lease is in the nature of a contract and is controlled by principles of contract law. *Amoco Oil Co. v. Snyder,* 505 Pa. 214, 478 A.2d 795 (1984); *Ezy Parks v. Larson,* 499 Pa. 615, 454 A.2d 928 (1982). Accordingly, it is appropriate to apply established contract principles to the instant case.

Turning to those principles it is well-established that "only material failure of performance by one party discharges the other party ... an immaterial failure does not operate as such a discharge." *Sgarlat v. Griffith,* 349 Pa. 42, 46, 36 A.2d 330, 332 (1944) (citing Restatement of Contracts § 274 (1932)); *See First Mortgage Co. of Pa. v.*

*Carter,* 306 Pa.Super. 498, 452 A.2d 835 (1982); *Greentree Borough v. Tortorete,* 205 Pa.Super. 532, 211 A.2d 76 (1965).

In this regard it has been said that:

Any material failure of performance by one party to a contract not justified by the conduct of the other discharges the latter's duty to give the agreed exchange; but if the alleged breach was an immaterial failure of performance, and the contract was substantially performed, the provisions of the contract are still effective.

P.L.E. Contracts § 367 (footnotes omitted).

In addition, at least one prominent commentator has opined that a technical breach of a contract should not, *ipso facto,* defeat a claim for specific performance.

It is not every breach of contract by a plaintiff that justifies the defendant in refusing performance on his part or prevents the plaintiff from maintaining an action for damages for the defendant's refusal; nor is it every breach by a plaintiff that will prevent him from obtaining a decree for specific performance. The plaintiff's nonperformance may be comparatively slight and unimportant, so that his breach is merely a partial breach. If the defendant will get substantial performance of that which was promised him and if money compensation is adequate as a remedy for the plaintiff's partial and non-vital breach, the plaintiff's breach is not one that will prevent specific enforcement.

5A Corbin on Contracts § 1176 (1964).

In *Knable v. Bradley,* 430 Pa. 153, 242 A.2d 224 (1968), this Court addressed an issue analogous to the present situation. The parties in *Knable* entered into a written contract for the purchase of a parcel of land for the primary purpose of acquiring access to a well which existed on the land. The agreement provided that the purchase price of $1275.00 was to be paid via monthly payments of $15.00. For a period of two years these payments were made on a regular basis. Thereafter, the payments were tendered and accepted with less regularity until eventually the payments

stopped altogether. The sellers at the time made no complaint concerning this breach of the agreement. Payments resumed eight months later at which time the sellers informed the buyers for the first time that the agreement was off. However, the sellers allowed the buyers to continue paying the real estate taxes on the property and to remain in possession of the land.

Thereafter, the buyers instituted an equity action seeking specific performance of their agreement. The lower court had dismissed the complaint holding that the sellers were within their right to declare a forfeiture and that the buyers were not entitled to a decree of specific performance.

On appeal this Court reversed, citing the basic rule set forth in *Warren Tank Car Co. v. Dodson*, 330 Pa. 281, 199 A. 139 (1938), and stated:

> [W]here a contract provides for payments at certain times, and for forfeiture upon default, but the creditor, either by inaction or by an affirmative course of dealing, misleads the debtor into the belief that strict regularity of payments will not be insisted upon, he cannot thereafter declare a forfeiture unless he first gives reasonable notice to the debtor that in the future he will demand performance at the precise times specified in the contract.... [This] is a principle, not of law, but of equity. From the strict *legal* standpoint the creditor is entitled to enforce the forfeiture according to the terms of the contract, but *equity*, or a court administering equitable principles under legal forms, will not permit him to do so if by lulling the debtor into a false sense of security he has led him into a default which otherwise the debtor might have avoided....

*Knable, supra* 430 Pa. at 157, 242 A.2d at 226. The *Knable* court reasoned that the sellers' inaction led the buyers into the belief that strict regularity of the payments would not be required. Furthermore, the failure to either complain of the late payments or to put the buyers on notice that they were demanding strict adherence to the terms of the agreement, precluded the sellers from declaring a forfeiture,

since the buyers were able and willing to pay the balance and the agreement was valid in all other respects. Hence, the plaintiff's demand for specific performance was granted.

In the present case the Superior Court agreed with the Chancellor that as a matter of law the failure of appellant to pay the taxes was not a material breach of the contract. However, the court attempted to somehow limit the effect of their holding by applying it to the forfeiture action only. The court focused heavily upon the breach, albeit immaterial, and ruled that appellant failed to demonstrate a clear right to specific performance.[3]

■ The court cited no authority for this *ad hoc* use of the concept of immateriality, and we can discern no justification for such a dichotomy. If a breach is found to be immaterial under the guise of one action on the contract, it should likewise be immaterial under a collateral action since the basic issue in both instances would be the same, i.e., whether there is a breach of the contract such that the non-breaching party is relieved of his duty to perform.[4]

■ Consequently, since we find no support for the distinction drawn by the Superior Court, we conclude that it was erroneous to proceed under this analysis.[5] Instead,

3. Additionally, the court made much ado about the fact that it was not until appellant had been notified of the breach and received the "Notice to Quit" did he attempt to exercise the purchase option on the property. However, a reading of the record reveals that approximately one year prior to this event, appellant, through his attorney, notified appellees of his intention to exercise the option. Therefore, for the court to intimate that appellant acted in bad faith is without foundation.

4. There is no question that alternative remedies can exist for a breach under separate contracts, e.g., forfeiture vs. loss of entitlement to specific performance. However, the concept of breach is separate from the remedy involved, and it is only to the breach inquiry that the issue of materiality is relevant.

5. This is not to say that an equity Chancellor could not find that an immaterial breach demonstrates some evidence of the unworthiness of the claimant to be afforded specific performance relief. However, where as here a Chancellor has found that an immaterial breach did not obviate a claimant's entitlement to specific performance, an appel-

once the Superior Court found that appellant's breach was immaterial, it should then have examined the correctness of the Chancellor's decision.

The standard of review in passing on a Chancellor's decision is well established.

[T]he findings of the Chancellor will not be reversed unless it appears that he has clearly abused his discretion or committed an error of law. Where credibility of witnesses is important to the determination, the Chancellor's findings are entitled to particular weight because of his opportunity to observe their demeanor. Where a reading of the record reasonably can be said to reflect the conclusions reached by the Chancellor, a reviewing court may not substitute its judgment for that of the Chancellor. A reviewing court, however, is not bound by findings which are without support in the record or have merely been derived from other facts. (citations omitted).

*Rusiski v. Pribonic*, 511 Pa. 383, 389–90, 515 A.2d 507, 510 (1986) (quoting *Frowen v. Blank*, 493 Pa. 137, 142, 425 A.2d 412, 415 (1981)).

Here the Chancellor found that appellant, during the tenancy of the lease, was lulled into a false sense of security and was at all times ready, willing and able to pay the taxes. Furthermore, appellant never refused to remit his share of the taxes. With the exception of this failure to pay the taxes, the Chancellor found appellant had been in full compliance with all the terms of the agreement. In finding that appellant had not materially breached the agreement, and that the breach could be remedied by payment of the taxes, the Chancellor held that appellant properly exercised the option to purchase precisely in accordance with its terms and that there was no other impediment to granting specific performance. We are of the opinion that this holding was correct and supported by adequate evidence in the record.

late court cannot say that as a matter of law a contrary rule should apply.

388

Accordingly, the order of the Superior Court is reversed, and the decree entered by the Court of Common Pleas of Fayette County is reinstated.

HUTCHINSON, Former J., did not participate in the consideration or decision of these cases.