J-A32024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANGELA ANDERSON, JAMES ANDERSON, AND LINDA HARTER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JODIE EVANS | : | |
| | : | No. 868 MDA 2017 |
| Appellant | : | |

Appeal from the Judgment Entered June 26, 2017
In the Court of Common Pleas of Centre County Civil Division at No(s):
2015-4847

BEFORE:   OTT, J., DUBOW, J., and STRASSBURGER, J. *

MEMORANDUM BY DUBOW, J.:                **FILED FEBRUARY 08, 2018**

Appellant, Jodie Evans, appeals from the entry of Judgment following a non-jury verdict in favor of Appellees, Angela Anderson, James Anderson, and Linda Harter,[1] in this action for Specific Performance and Quantum Meruit/Unjust Enrichment.  After careful review, we affirm on the basis of the trial court's Opinion.

The facts, as found by the trial court and confirmed by our review of the record, are as follows.  This dispute arises in the context of an oral real estate rent-to-own arrangement.  Appellant is the current owner of the property, which includes a residence, located in Liberty Township, Centre

_____

[1] Appellees Angela Anderson and James Anderson are spouses.  Appellee Linda Harter is Angela Anderson's mother.

_____

*   Retired Senior Judge assigned to the Superior Court.

County. The property is encumbered by a mortgage issued to Appellant by PHH Mortgage.

In January 2013, the parties began negotiating the terms of an oral rent-to-own agreement, including the price and down payment amount, through Facebook, email, and text messages.[2] On April 15, 2013, the Andersons entered into an oral rent-to-own agreement for a total purchase price of $105,000.00. Under the terms of the agreement, Appellees also agreed to pay the outstanding balance due on Appellant's mortgage over a period of up to 10 years, and to pay all real estate taxes, utilities, and insurance on the property.[3] Appellees paid Appellant a $5,000.00 deposit on February 1, 2013; thus, the outstanding balance on the agreement was $100,000.00.

In February or March 2013, Appellees began renovating the residence on the property, and on April 15, 2013, they moved in. At this time, Appellant's mortgage was three months in arrears. Beginning in May 2013, Appellees made payments of $1,000.00, a portion of which was allocated to arrears, directly to the mortgage company. By May 2014, Appellant's mortgage was no longer in arrears. Once the mortgage became current, the

---

[2] Ms. Harter did not participate in any of the negotiations. Her only involvement in this matter was to assist the Andersons financially.

[3] Appellees made monthly mortgage payments directly to Appellant's mortgage company, and paid the utility bills directly to the utility providers.

parties agreed to modify the oral agreement to reduce the monthly payment amount to approximately $850.00 per month.

During their time in possession of the property, Appellees attempted to secure financing to purchase the property outright, but were unsuccessful. Appellees made approximately $34,628.89 worth of renovations and improvements to the property, investing approximately 775 hours of their own labor into the renovations and improvements.

Two years later, in early 2015, Appellant attempted to change the terms of the parties' agreement. In a series of emails dated between March 20, 2015, and April 22, 2015, Appellant explained to Appellee Angela Anderson that Appellant needed a written and signed document evidencing the parties' agreement by April 22, 2015, "in order to get her ex-husband's name off of the title to the [p]roperty."[4] On April 20, 2015, Appellant emailed the written document evidencing their oral arrangement to Appellee Angela Anderson. Appellant instructed Appellee Angela Anderson to sign and backdate the document by two years to May 1, 2013. The written agreement is dated May 1, 2013, and contains the signatures of Appellant and Appellees Angela Anderson and James Anderson. Appellee Angela Anderson testified, and the trial court found credible, that she received only

---

[4] Trial Ct. Op., 11/29/16, at 3.

the signature page of the agreement via email, and signed her own name and that of Appellee James Anderson without first consulting him.

The terms of the written agreement that Appellant sent on April 20, 2015, differ from those of the parties' oral agreement. The written agreement indicates a purchase price of $115,000.00, including a $5,000.00 down payment, with Appellees paying the remaining $110,000.00 in monthly installments of $1,000.00. The written agreement also states "On or Before January 1, 2015[,] Buyer will obtain financing to [fulfill] payment in the full amount." This term decreased the terms of the oral agreement from ten years to 19½ months, ending on January 1, 2015, four months **before** Appellant sent Appellee Angela Anderson the written agreement.

The parties agree that the purchase price stated in the written agreement was incorrect. The undisputed purchase price of the property is $105,000.00, with a $5,000.00 deposit.

According to Appellees, the oral agreement required them to make monthly payments over the course of 10 years, or until they had paid the mortgage in full.

In October 2015, Appellant filed a Landlord Tenant Action at a separate docket number to evict Appellees from the property. On December 15, 2015, Appellees filed a Motion for Preliminary Injunction to prevent their eviction. That same day, Appellees also filed the instant Complaint seeking to enforce the terms of the parties' oral agreement to purchase the property.

On December 21, 2015, the court entered an Order directing Appellant to cease all attempts to terminate the oral agreement and to evict Appellees pending the outcome of this action.[5]  The court also ordered Appellant to discontinue her Landlord Tenant action.

On August 22, 2016, Appellant filed an Answer, New Matter, and Counterclaim.  On August 24, 2016, Appellees filed a Reply to New Matter and Counterclaim and New Matter to Counterclaim.

On August 31, 2016, the court held a bench trial, following which the parties submitted Proposed Findings of Fact and Conclusions of Law.  On November 29, 2016, the court entered a verdict in favor of Appellees on their claim for Specific Performance.  The court concluded that the parties' oral agreement constituted a valid, enforceable contract.  The court declined to reach the merits of Appellees' Quantum Meruit/Unjust Enrichment claim.

On December 9, 2016, Appellant filed a Post-Trial Motion for Judgment Notwithstanding the Verdict ("JNOV").  On May 12, 2017, the court entered an Order granting the Motion in part, and denying the Motion in part.  In particular, the court again found in favor of Appellees and ordered specific performance of the oral agreement, which it concluded was a valid and enforceable agreement that had commenced on April 15, 2013.  The court expressly concluded that the written agreement was not a valid and

_____

[5] The court amended this Order on March 23, 2016, to require Appellees to post a $2,000.00 bond.

enforceable contract. The court further explicated the terms of the oral

agreement as follows:

> a. The purchase price for the property is $105,000.00 with a $5,000.00 down payment on a rent[-]to[-]own agreement;
>
> b. [Appellees] shall pay a monthly rental payment of $1,000.00 beginning June, 2017;
>
> c. All payments made by [Appellees] to [Appellant] for this property shall be applied to the purchase price;
>
> d. [Appellees] shall pay all real estate taxes, utilities and insurance on the property;
>
> e. Payments shall continue until May 1, 2023 at which time [Appellees] must pay the remaining purchase price and close on the property.

Trial Ct. Opinion, 5/12/17, at 1-2. The court again declined to reach the

merits of Appellees' Quantum Meruit/Unjust Enrichment claim. *Id.*

This timely appeal followed.[6] Appellant complied with the court's

Pa.R.A.P. 1925 Order.[7]

Appellant presents the following three issues on appeal:

---

[6] Appellant appealed from the May 12, 2017 Order granting in part, and denying in part her Post-Trial Motion. An order denying post-trial motions is interlocutory and generally not appealable. *See Levitt v. Patrick*, 976 A.2d 581, 584 n.2 (Pa. Super. 2009) (stating that appeal properly lies from the entry of judgment, not from order denying post-trial motions). However, since the trial court prothonotary entered Judgment on June 26, 2017, we consider the appeal as taken from the entry of Judgment. *See Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 514-15 (Pa. Super. 1995) (stating that appellate courts may "regard as done that which ought to have been done") (citations omitted)

[7] The trial court did not file a Pa.R.A.P. 1925(a) Opinion.

1. Whether, under the facts of this case, an alleged oral agreement satisfies the **Kurland v. Stolker**, 533 A.2d 1370 (Pa. 1987), standard for an exception to the statute of frauds, when the material terms of the alleged oral agreement were not presented or outlined at trial[?]

2. Whether, under the facts of this case, an alleged oral agreement to rent real property until the year 2023 supersedes the parties' written agreement, which contains an integration clause and authorizes rental only until the year 2015[?]

3. Whether, under the facts of this case, an individual who has no relation to the matter at hand is a party to the relevant contract[?]

Appellant's Brief at 5 (reordered for ease of disposition).

In her first two issues on appeal, Appellant challenges the court's denial of her Motion for JNOV based on its conclusion that the oral agreement between the parties represents a valid and enforceable rent-to-own contract, which the purported subsequent written agreement did not supersede. Appellant's Brief at 21-36.

This Court will reverse a trial court's denial of JNOV only if the trial court committed an error of law that controlled the case or abused its discretion.

Appellate review of a denial of JNOV is quite narrow. We may reverse only in the event the trial court abused its discretion or committed an error of law that controlled the outcome of the case. Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill will. When reviewing an appeal from the denial of a request for JNOV, the appellate court must view the evidence in the light most favorable to the verdict-winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable

testimony and inferences. . . . Thus, the grant of JNOV should only be entered in a clear case and any doubts must be resolved in favor of the verdict-winner[.]

***Sears, Roebuck & Co. v. 69th Street Retail Mall, L.P.***, 126 A.3d 959, 967 (Pa. Super. 2015) (citations, quotation marks, and brackets omitted).

In the case *sub judice*, the trial court ordered specific performance on the parties' oral agreement after determining that the oral agreement constituted a valid and enforceable contract.

"[A] request for specific performance is an appeal to the court's equitable powers." ***Oliver v. Ball***, 136 A.3d 162, 166 (Pa. Super. 2016). A court will order specific performance when a plaintiff demonstrates that she is clearly "entitled to such relief, there is no adequate remedy at law, and the trial court believes that justice requires such a decree." ***Id.*** "[S]pecific performance is an appropriate remedy to compel the conveyance of real estate where a seller violates a realty contract and specific enforcement of the contract would not be contrary to justice." ***Id.*** at 167.

Generally, agreements for the sale of real estate are only enforceable if they are in writing and signed by the seller. ***Hostetter v. Hoover***, 547 A.2d 1247, 1250 (Pa. Super. 1988). ***See also*** 33 P.S. § 1 (Statute of Frauds). However, an oral contract for the sale of real estate may be enforceable if the party seeking to enforce the contract has satisfied the "part performance" exception.

The Pennsylvania Supreme Court explained this exception in ***Kurland***, ***supra***, noting that in order to satisfy this exception, the party seeking to

enforce the oral agreement must establish the following by "full, complete, and satisfactory proof:" (1) the terms of the contract; (2) the boundaries and quantity of the property; (3) the purchase price or amount of consideration; (4) that possession was taken pursuant to the oral contract; (5) that at or immediately after possession was taken, it was notorious, exclusive, continuous, and maintained; and (6) performance or part performance by the purchaser "which could not be compensated in damages, and such as would make rescission inequitable and unjust." *Id.* at 1373.

Here, the trial court found that Appellees had presented "full, complete, and satisfactory proof" to satisfy the part-performance exception to the Statute of Frauds. *See* Trial Ct. Op., 11/29/16, at 8-10. Accordingly, the court concluded that specific performance on the agreement was the appropriate equitable remedy. *Id.* at 11; *see also* Trial Ct. Order, 5/12/17.

Guided by our standard of review, we conclude Appellant is due no relief on her first two issues. The trial court has provided a comprehensive and well-reasoned Opinion, with citation to relevant case law and the record. We, thus, affirm on the basis of that Opinion. *See* Trial Ct. Op., 11/29/16, at 8-10 (explaining that: (1) the parties negotiated the purchase price, down payment amount, and terms of the rent-to-own agreement through Facebook, email, and text messages; (2) the parties do not dispute the boundaries of the property in question; (3) Appellees took possession of the property around April 5, 2013, and have maintained notorious, exclusive,

and continuous possession since that date; (4) Appellees made improvements to the property for which no remedy at law would adequately compensate them; (5) the written agreement is not a valid and enforceable contract because Appellant never sent the portion of the agreement with its terms to Appellee Angela Anderson, so Appellee never saw, and, thus, never agreed to the terms of the written contract. The invalidity of the written agreement is further confirmed by the fact that Appellant did not send Appellee the agreement until three months after the expiration date the agreement provided for, and the term in the written agreement differed significantly from the term to which the parties originally agreed).

In her last issue, Appellant avers that the trial court erred in concluding that Appellee Linda Harter is "part of this transaction." Appellant's Brief at 36. Appellant claims that Ms. Harter's only relationship to this case is that she lived in the residence on the property. *Id.* Appellant, thus, concludes that Ms. Harter has failed to "prevail[] on [her] burden of proof." *Id.* at 37.

Preliminarily, we observe that appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. *See also* Pa.R.A.P. 2114-2119 (addressing specific requirements of each subsection of brief on appeal). "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal

authorities." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (citation omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Id.*** If a deficient brief hinders this Court's ability to address any issue on review, we shall consider the issue waived. ***Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa. Super. 2006) (holding that appellant waived issue on appeal where he failed to support claim with relevant citations to case law and record). ***See also In re R.D.***, 44 A.3d 657 (Pa. Super. 2012) (finding that, where the argument portion of an appellant's brief lacked meaningful discussion of, or citation to, relevant legal authority regarding issue generally or specifically, the appellant's issue was waived because appellant's lack of analysis precluded meaningful appellate review).

Instantly, with respect to Appellant's final issue on appeal, the argument section of her Brief is significantly underdeveloped. It is unclear to this Court whether Appellant challenges Ms. Harter's standing to participate as a plaintiff in the underlying matter, whether she has met her burden of proof on the claims raised in the Complaint, or some other issue, because Appellant's Brief lacks meaningful discussion of her position. Furthermore, the citation to legal authority Appellant included in her Brief, which stood only for the general proposition that the duty of the trial court

when interpreting a contract is to ascertain the intent of the parties,[8] fails to elucidate her argument. Thus, Appellant has waived this issue for appellate review.

Judgment affirmed. Jurisdiction relinquished. The parties are directed to annex the trial court's November 29, 2016 Verdict, Opinion, and Order to any further filings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/08/2018

---

[8] Appellant cited **Murphy v. Duquesne Univ. of the Holy Ghost**, 777 A.2d 418, 429 (Pa. 2001). Appellant's Brief at 36-37.

IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

ANGELA ANDERSON, JAMES
ANDERSON, and LINDA HARTER,
    Plaintiffs

v.

JODIE EVANS,
    Defendant

:
:
:
:
:
:
:
:
:
:
:

No. 2015-4847

Attorney for Plaintiffs:
Attorney for Defendant:

Robert A. Mix, Esq.
David S. Gaines, Jr., Esq.

## VERDICT, OPINION AND ORDER

**Ruest, J.**

Presently before the Court is a Complaint for Specific Performance and Quantum

Meruit/Unjust Enrichment filed by Angela Anderson, James Anderson, and Linda Harter

("Plaintiffs") on December 15, 2015. Plaintiffs also filed a Motion for Preliminary Injunctive

Relief. Pursuant to an Order entered on December 21, 2015, Jodie Evans ("Defendant") was

ordered to cease all attempts to terminate the Agreement or evict Plaintiffs until a final

disposition of this action, and to discontinue her Landlord Tenant Complaint. On March 23,

2016, the Order was amended to require Plaintiffs to post bond in the amount of $2,000.00. The

Complaint was reissued March 17, 2016, and reinstated again on July 25, 2016. Defendant

filed an Answer, New Matter, and Counterclaim on August 22, 2016, and Plaintiffs filed a Reply

to New Matter and Counterclaim and New Matter to Counterclaim on August 24, 2016. A non-

jury trial was held on August 31, 2016. Proposed Findings of Fact and Conclusions of Law were

submitted by Plaintiffs on October 14, 2016, and by Defendant on October 17, 2016. Upon

consideration of the evidence presented, the briefs, and the arguments of counsel, the Court

finds as follows:

☒O ☐RD ☐S

## Findings of Fact

1. Defendant is the current owner of the property underlying this dispute, located in Liberty Township, Centre County, Pennsylvania, with a mailing address of 112 South Mountain Road, Blanchard, Pennsylvania 16826 ("Property").

2. The Property is encumbered by a mortgage issued by Defendant to PHH Mortgage ("Mortgage").

3. In April 2013, the Mortgage was three months in arrears.

4. Plaintiff Angela Anderson initially inquired about the sale of the house through Facebook, and the parties negotiated the price, down-payment, and terms of the sale through Facebook, email, and text messages.

5. Plaintiffs entered into an oral lease-to-own agreement ("Oral Agreement") with Defendant beginning on April 15, 2013, whereby Plaintiffs agreed to pay the outstanding balance due on the Mortgage during a period of up to ten years.

6. Under the Oral Agreement, the total purchase price was $105,000.00.

7. Plaintiffs paid Defendant a $5,000.00 deposit on or about February 1, 2013, which was deducted from the total purchase price of the Property, leaving a final purchase price of $100,000.00.

8. In addition to the Mortgage, Plaintiffs agreed to pay all real estate taxes, utilities, and insurance on the Property.

9. Plaintiffs paid Defendant's mortgage directly to the mortgage company, and Plaintiffs also paid the utility bills directly to the providers.

10. Plaintiff Linda Harter's only involvement in this matter was financial through the Andersons; Plaintiff Harter never participated in any of the negotiations.

11. Plaintiffs Angela and James Anderson began renovations to the Property around February or March 2013, and began to reside in the residence on April 15, 2013.

2

12. Plaintiffs Angela and James Anderson made various renovations and improvements to the property totaling $34,628.89, and invested approximately 775 hours of their own labor into the renovations and improvements.

13. On or about April 15, 2013, Plaintiffs paid the mortgage company a pro-rated monthly installment of $440.00 for the month of April 2013.

14. Plaintiffs Angela and James Anderson have maintained exclusive and continuous possession of the property since April 15, 2013.

15. Due to the Mortgage being three months in arrears at the time Plaintiffs took possession of the Property, Plaintiffs made payments of $1,000.00 per month to the mortgage company from May 2013 until May 2014, at which time the Mortgage was no longer in arrears.

16. Plaintiffs and Defendant agreed to modify the Oral Agreement to reduce the amount of the monthly payments to approximately $850.000[1] from May 2014 to the present.

17. Plaintiffs attempted to obtain financing to pay for the house in full, but encountered difficulty doing so because of Plaintiff James Anderson's prior foreclosure.

18. Defendant explained to Plaintiff Angela Anderson in a series of emails dated March 20, 2015 through April 22, 2015, that she needed a written and signed document evidencing their arrangement by April 22, 2015, in order to get her ex-husband's name off of the title to the Property. Defendant's Exhibit 2.

19. Defendant emailed the written document evidencing their arrangement to Plaintiff Angela Anderson on April 20, 2015, and instructed Plaintiffs to sign and backdate the document to May 1, 2013.

20. The Article of Agreement ("Agreement"), Defendant's Exhibit 1, is dated May 1, 2013, and signed by Angela Anderson, James Anderson, and Jodie Evans.

---

[1] The monthly installment amount varied from month to month based on what was due to the Mortgage Company.

3

21. The terms of the Agreement indicate the purchase price is $115,000.00, including a $5,000.00 down payment, with the remaining $110,000.00 to be paid by making payments each month of $1,000.00.

22. The Agreement also states: "On or Before January 1, 2015 Buyer will obtain financing to full fill [sic] payment in the full amount," which decreases the terms of the lease from ten years, ending on May 1, 2023, to nineteen and one-half months, ending on January 1, 2015. Defendant's Exhibit 1.

23. The Agreement also states: "Settlement (Purchase of "Property") shall take place on or before January 1, 2015." Defendant's Exhibit 1.

24. Defendant testified that she agrees the purchase price as stated in the Agreement is an error. The undisputed purchase price of the house is $105,000.00, with a $5,000.00 deposit to be deducted from the total, leaving a remaining purchase price of $100,000.00.

25. The unsigned Article of Agreement indicates the purchase timeline as a twelve year period. Plaintiffs' Exhibit 5.

26. Plaintiffs testified their understanding of the Agreement was that monthly payments were to be made over the course of up to ten years, or until the Mortgage was paid in full, whichever comes first.

27. Plaintiff Angela Anderson testified that she only received the signature page to the Agreement, and that she signed both her own and Plaintiff James Anderson's name, without previously discussing the matter with him.

### Conclusions of Law

1. "Specific performance compels the surrender of a thing in itself, because that thing is unique and cannot by its nature be duplicated." *Cimina v. Bronich*, 517 Pa. 378, 537 A.2d 1355, 1357 (1988) (citation omitted).

4

2. A decree of specific performance "will be granted only if a plaintiff clearly is entitled to such relief, there is no adequate remedy at law, and the trial court believes that justice requires such a decree." *Oliver v. Ball*, 2016 PA Super. 45, 136 A.3d 162, 166 (citation omitted).

3. "Courts in this Commonwealth consistently have determined that specific performance is an appropriate remedy to compel the conveyance of real estate where a seller violates a realty contract and specific enforcement of the contract would not be contrary to justice." *Id.* at 167.

4. The statute of frauds provides, in pertinent part:

    "All leases, estates, interests of freehold or term of years . . . made or created by . . . parol, and not put in writing, and signed by the parties [to the agreement] . . . shall have the force and effect of leases or estates at will only, and shall not . . . be deemed . . . to have any other or greater force or affect, [regardless of any consideration for making such agreements]."

    33 P.S. § 1.

5. An oral contract for the sale of real estate may be taken out of the statute of frauds if it satisfies the "part performance" exception. The following must be established by "full, complete, and satisfactory proof:" (1) the terms of the contract; (2) the boundaries and quantity of the property must be clearly indicated; (3) the purchase price or amount of consideration; (4) the possession was taken pursuant to the oral contract; (5) at or immediately after possession was taken, it was notorious, exclusive, continuous, and maintained; and (6) performance or part performance by the purchaser "which could not be compensated in damages, and such as would make rescission inequitable and unjust." *Kurland v. Stolker*, 516 Pa. 587, 533 A. 2d 1370, 1374 (1987).

6. Unjust enrichment is an equitable doctrine that may apply where a written or express contract does not exist between the parties. *Mitchell v. Moore*, 1999 PA Super. 77, 729 A.2d 1200, 1203.

5

7. "Where unjust enrichment is found, the law implies a contract, referred to as either a quasi-contract or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred. In short, the defendant makes restitution to the plaintiff in quantum meruit." *Schenck v. K.R. David, Ltd.*, 446 Pa. Super. 94, 666 A.2d 327, 328-29 (1995)(citation omitted).

## Discussion

### I. Specific Performance

Plaintiffs filed this action seeking, *inter alia*, a decree of Specific Performance of the Oral Agreement for the sale of the Property, as modified, binding all parties by the terms and conditions thereof, giving Plaintiffs until May 1, 2023 to pay the remaining purchase price and to close on the sale of the Property. In the event that Plaintiffs pay the remaining purchase price and close on the sale of the Property before May 1, 2023, the Oral Agreement stipulates that Defendant must convey the Property to Plaintiffs at that time. Defendant contends that the subsequent Written Agreement, signed by all parties and dated May 1, 2013, is a valid and enforceable contract and is thus controlling in this matter. However, Plaintiffs claim to have never entered into the Written Agreement, and because there was no "meeting of the minds," it is not a valid contract.

In regard to the equitable remedy of Specific Performance, the Pennsylvania Supreme Court has explained:

> From the moment an agreement of sale of real estate is executed and delivered it vests in the grantee [(purchaser)] what is known as an equitable title to the real estate. Thereupon the vendor [(seller)] is considered as a trustee of the real estate for the purchaser and the latter becomes a trustee of the balance of the purchase money for the seller. Hence, if the terms of the agreement are violated by the [seller], [the purchaser] may go into a court of equity seeking to enforce the contract and to compel specific performance.

> *Payne v. Clark*, 409 Pa. 557, 561, 187 A.2d 769, 770-71 (1963)(internal citations omitted).

6

Specific performance is "the surrender of a thing in itself, because that thing is unique and thus incapable—by its nature—of duplication." *Oliver*, 136 A.3d at 166 (citation omitted). A decree of specific performance "will be granted only if a plaintiff clearly is entitled to such relief, there is no adequate remedy at law, and the trial court believes that justice requires such a decree." *Id.* at 166. "Courts in this Commonwealth consistently have determined that specific performance is an appropriate remedy to compel the conveyance of real estate where a seller violates a realty contract and specific enforcement of the contract would not be contrary to justice." *Id.* at 167.

It is well-established that because no two parcels of land are identical, any amount of monetary damages will be insufficient to reproduce a particular parcel of land. *Id.* Therefore, in situations where a seller breaches a realty agreement, "we can assume that [a buyer] has no adequate remedy at law." *Snyder v. Bowen*, 359 Pa. Super. 47, 518 A.3d 558, 560 (Pa. Super. 1986)(citation omitted).

The statute of frauds mandates that agreements for the sale of real estate are only enforceable if they are in writing and signed by the seller. *Hostetter v. Hoover*, 378 Pa. Super. 1, 547 A.2d 1247, 1250 (Pa. Super. 1988). The purpose of this rule is to prevent perjury and fraudulent claims. *See, e.g., Brotman v. Brotman*, 353 Pa. 570, 46 A.2d 175, 177 (1946); *Fannin v. Cratty*, 331 Pa. Super. 326, 480 A.2d 1056, 1058 (Pa. Super. 1984).

However, there exists a well-recognized exception to the statute of frauds in the context of an oral agreement for the sale of real estate, known as the "part performance" exception. To establish this exception, the Pennsylvania Supreme Court has explained:

> The terms of the contract must be shown by full, complete, and satisfactory proof. The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and, at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous, and maintained. And it must show performance or part performance by the [buyer] which could not be compensated in damages, and such as would make rescission [of the oral contract] inequitable and unjust.

7

*Kurland*, 522 A.2d at 1373. *See also Hostetter*, 547 A.2d at 1251(affirming lower court's order of specific performance of an oral contract for the sale of real estate in favor of appellees, finding that a refusal to enforce the contract under the circumstances would be inequitable and unjust; where appellees presented evidence of possession of and substantial improvements to the property at issue; where the possession of and improvements to were made pursuant to the parties' agreement; and where appellees produced evidence that they spent several thousand dollars on materials and labor for the improvements).

In the case *sub judice*, we find that the terms of the Oral Agreement, entered into on and prior to April 15, 2013, and later modified only as to a reduction in the monthly installment payments to the mortgage company from $1,000.00 to $850.00, were shown by full, complete, and satisfactory proof, thus removing the Oral Agreement from the statute of frauds and entitling Plaintiffs to specific performance under the "part performance" exception. Furthermore, we reject Defendant's contention that the subsequent Written Agreement, signed in April 2015 and backdated to April 15, 2013, is controlling.

Plaintiff Angela Anderson initially inquired about the sale of the house through Facebook, and the parties negotiated the price, down-payment, and terms of the rent-to-own arrangement through Facebook, email, and text messages. The boundaries of the Property to be purchased are undisputed, as well as the total purchase price of $105,000.00. Also not in dispute is that Plaintiffs paid Defendant a $5,000.00 deposit on or about February 4, 2013, pursuant to the Oral Agreement, which was deducted from the total purchase price, leaving a remaining balance of $100,000.00. Additionally, both parties agree that Plaintiffs took possession of the Property on or about April 5, 2013, and have since maintained notorious, exclusive, and continuous possession thereof.

Although it remains uncontroverted that Plaintiffs made several renovations to the Property, Defendant argues that many of these were discretionary in nature and asserts that

8

Plaintiffs have failed to establish that any of the "improvements" actually increased the value of the Property. We disagree. While some of the outdoor improvements and landscaping could be considered discretionary, such as installing flowerbeds and ponds and constructing a driveway, the extensive nature of the indoor improvements, including, but not limited to, constructing walls, installing electrical wiring and fixtures, and installing tile, carpet and flooring, indicate that Plaintiffs intended to stay in the house for a long period of time. Such improvements and renovations are permanent in nature, and could not be taken with Plaintiffs if they decided to move or were evicted from the house. Furthermore, the fact that Plaintiffs completed all renovations themselves shows the inherent uniqueness of land and further proves that there is no remedy at law that would adequately compensate Plaintiffs for this labor. Combined with this significant investment in labor, Plaintiffs expended a considerable amount of money on materials for the renovations, totaling $34,628.89. Thus, we believe the final element of the "part performance" exception is satisfied. Accordingly, the Oral Agreement entered into by the parties on April 15, 2013—although never reduced to a writing—is nevertheless a valid and enforceable contract, and all parties are bound by the terms thereof.

In contrast, the Written Agreement Defendant purports to have sent to Plaintiffs in April of 2015 does not constitute a valid and enforceable contract. Plaintiff Angela Anderson testified at trial that she only received the signature page of the Written Agreement, and, believing the terms would be identical to the above-mentioned Oral Agreement from April 15, 2013, she signed both her own and her husband's name and backdated it to April 2013 at the request of Defendant. However, Defendant made a crucial mistake in including in the Written Agreement a provision referencing a one-year period to purchase the Property in full, expiring in January of 2015, differing from the original agreement, which gave Plaintiffs a ten-year period to purchase the Property. The fact that Defendant sent the Written Agreement to Plaintiff Angela Anderson on or about April 22, 2015, more than three months after Defendant's purported expiration date had expired, further illustrates the inequity in enforcing the Written Agreement. In sum,

9

Defendant sent Plaintiff a document in April 2015, asking Plaintiffs to agree to terms of an agreement in which the deadline for purchasing the Property had passed three months prior, and further instructed Plaintiffs to backdate the document to make it appear as though the Agreement had been entered into back in 2013. However, had Plaintiff Angela Anderson received the entire Written Agreement, it would be unreasonable for her to have entered into a contract for which the performance thereof had already expired. Additionally, although Plaintiffs did initially attempt to obtain financing in 2015 to purchase the house in full, this fact alone does not establish that the parties agreed the purchase price *had to* be paid in full during one year.

## II.    Unjust Enrichment/Quantum Meruit

Alternatively, Plaintiffs have asserted a claim for Unjust Enrichment/Quantum Meruit due to the substantial improvements made to the Property totaling $34,628.89, plus 775 hours of their own labor. Unjust enrichment is an equitable doctrine that may apply where a written or express contract does not exist between the parties. *Mitchell*, 729 A.2d at 1203. "Where unjust enrichment is found, the law implies a contract, referred to as either a quasi-contract or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred. In short, the defendant makes restitution to the plaintiff in quantum meruit." *Schenck*, 666 A.2d at 328-29.

Because this Court grants Plaintiffs' request for Specific Performance, we decline to issue a ruling on Plaintiffs' alternative claim of Unjust Enrichment/Quantum Meruit.

10

Accordingly, the following order is entered:

## ORDER

AND NOW, this 29th day of November, 2016, judgment is entered against Defendant and in favor of Plaintiffs as follows:

1. The Court finds in favor of Plaintiffs.

2. Specific Performance of the Oral Agreement beginning on April 15, 2013, is granted and all parties are bound by the terms thereof.

3. The Written Agreement does not constitute a valid and enforceable contract.

4. Because this Court grants Specific Performance, we decline to rule on Plaintiffs' alternative claim of Unjust Enrichment/Quantum Meruit.

BY THE COURT:

_Pamela A. Ruest, Judge_

11