**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2185

_____

U.S. BANK N.A.,
as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage
Securities Corp., Multifamily Mortgage Pass-through Certificates, Series 2012-K18

v.

B-R PENN REALTY OWNER, LP,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:21-cv-00502)
District Judge: Honorable Wendy Beetlestone

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 24, 2024

Before: KRAUSE, BIBAS, and AMBRO, *Circuit Judges*

(Filed: September 25, 2024)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

B-R Penn Realty took out a $46 million mortgage on its Philadelphia apartment building. The loan was securitized and assigned to U.S. Bank, while three other firms serviced the loan day to day. During the Covid pandemic, Penn Realty anticipated financial trouble, so two of the servicers agreed to forbear payments for three months, through June 2020. When the trouble persisted, they extended the forbearance by another three months, through September 2020. But the third servicing firm never realized that the second forbearance had been approved.

This mistake led to a chain of errors. The third servicer mistakenly told one of the other servicers that it had denied the second forbearance; that other servicer turned around and mistakenly told Penn Realty that the second forbearance had been invalid all along and demanded more than $1.6 million immediately. Penn Realty had expected to pay just over $400,000 in October, so it responded that it lacked the money. But it later went further, insisting that "there [was] no conceivable way for [it] to meet [its] obligations" unless the lender and servicers agreed to forbear payments even longer. App. 1375. It was "not in a position to commence interest payments for an additional six months and principal payments for 12 months." *Id.*

Once the second forbearance ended, Penn Realty failed to pay either the incorrect $1.6 million or the correct $400,000. So a servicer flagged the mortgage as likely to default and later notified Penn Realty that it had defaulted. U.S. Bank then sued to foreclose on the mortgage. After a bench trial, the District Court ruled that Penn Realty had breached the

2

mortgage contract. That ruling was consistent with its earlier decision dismissing Penn Realty's counterclaims for breach of contract and promissory estoppel.

Penn Realty now appeals both the bench trial ruling and the dismissal of its counterclaims. We review the court's legal conclusions de novo and its findings of fact for clear error. *McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009). We review de novo its dismissal of the counterclaims for failure to state a claim. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 83 (3d Cir. 2011).

Penn Realty argues that it could not have breached the mortgage contract because U.S. Bank would not have honored that contract. If Penn Realty had lived up to its contractual duties by paying $400,000, it contends, U.S. Bank would have rejected the payment because it thought it was owed the full $1.6 million.

But that argument is mistaken. Penn Realty breached by failing to pay the October 2020 bill for $400,000. That payment was due after the second forbearance expired. As its employee testified, U.S. Bank and its servicers would have accepted that amount. The servicer's mistaken request for $1.6 million did not excuse Penn Realty's obligation to pay its October 2020 bill. In making this mistake, the servicer did not *materially* fail to perform its obligations under the contract. *See Cimina v. Bronich*, 537 A.2d 1355, 1358 (Pa. 1988). So Penn Realty was still obliged to uphold its end of the deal and pay the October bill after already getting the benefit of the six-month forbearance.

Penn Realty also argues that its loan was flagged for default only because the servicer had mistakenly demanded $1.6 million. But that ignores Penn Realty's own admission. The servicers flagged the loan for default only because Penn Realty had said that it was "not in

a position to commence interest payments for an additional six months and principal payments for 12 months." App. 1375. Those windows extended well beyond the forbearance period, which had ended by the time they flagged the loan for default. Plus, a servicer gave Penn Realty notice of default only in late November 2020, after the second forbearance expired and after Penn Realty failed to make the October payment. So Penn Realty's failure to pay in October triggered the default—that was the breach.

Resisting this conclusion, Penn Realty repackages its defenses as a counterclaim that U.S. Bank breached by mistakenly demanding $1.6 million. Not so. It cites no authority making that a breach as a matter of law; and nothing in the loan, assignment, or forbearance agreements makes that a breach. On the contrary, state law requires "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." *2401 Pa. Ave. Corp. v. Fed'n of Jewish Agencies of Greater Phila.*, 489 A.2d 733, 736 (Pa. 1985). A single mistaken request for payment falls far short of that. *See Cimina*, 537 A.2d at 1358.

Nor does equitable estoppel help Penn Realty. By demanding an exorbitant payment, it claims, the servicers induced it to default. Yet the facts tell a different story. Though the servicers erred, Penn Realty overreacted, insisting that it could not make *any* payments *for months* after the second forbearance ended. Because Penn Realty was behind regardless, the demand for extra payment did not induce its breach. *See Kreutzer v. Monterey Cnty. Herald Co.*, 747 A.2d 358, 362 (Pa. 2000). And because there was a valid contract, promissory estoppel does not apply either. *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990). We will thus affirm.